UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHEILA L. DUNLOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:14-cv-0090-DML-SEB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

# Decision on Judicial Review

Plaintiff Sheila L. Dunlop applied in July 2010 for Disability Insurance Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since June 1, 2008. Acting for the Commissioner of the Social Security Administration following a hearing conducted by video conference on March 12, 2012, administrative law judge Janice M. Bruning issued a decision on August 18, 2012, finding that Ms. Dunlop is not disabled. The Appeals Council denied review of the ALJ's decision on November 21, 2013, rendering the ALJ's decision for the Commissioner final. Ms. Dunlop timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

Mr. Dunlop contends that the ALJ erred by (1) failing properly to evaluate opinions by Dr. Chrystal Anderson, a treating physician and (2) unfairly discounting her credibility.

## Standard for Proving Disability

To prove disability, a claimant must show that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB benefits); 42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1] Ms. Dunlop is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's]

---

[1] Two programs of disability benefits are available under the Social Security Act: DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381 *et seq.* The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits. For SSI benefits, materially identical provisions appear in Title XVI and generally at 20 C.F.R. § 416.901 *et seq.*

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and his RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can

perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

I. **The ALJ's Sequential Findings**

Ms. Dunlop was born in 1964 and was 43 years old at the alleged onset of her disability in June 2008. She was 48 years old at the time of the ALJ's decision

4

denying disability benefits. She had work experience as a cashier and as a housekeeper, and had last worked in June 2008 at a fast food restaurant. R. 201.

At step one, the ALJ found that Ms. Dunlop had not engaged in substantial gainful activity since her alleged onset date. At step two, she identified various physical impairments as severe, including hypertension, obesity, mild degenerative changes to the lumbar spine, fibromyalgia, trochanteritis of the hips, "status post tear and surgery to the right knee with degenerative joint disease," and "status post carpal tunnel syndrome with surgery." R. 51. She concluded there were no severe mental impairments, a finding that Ms. Dunlop does not challenge. At step three, the ALJ determined that no listings were met.

The ALJ next determined Ms. Dunlop's residual functional capacity and decided she was capable of only sedentary work—the ability to sit for six hours and stand/walk for two hours and to lift/carry up to 10 pounds—with additional restrictions. The ALJ prohibited climbing ropes, ladders, or scaffolding, permitted only occasional climbing of ramps and stairs, balancing, stooping, crouching, crawling, or kneeling, and permitted the use of a cane to ambulate to and from a workstation. She found Ms. Dunlop could frequently use her hands for handling, fingering, and feeling. She forbid uneven terrain and wet or slippery surfaces, and imposed a sit/stand option, allowing Ms. Dunlop to sit for 45 minutes and to stand for 1-2 minutes. R. 53.

With this RFC and based on the testimony of a vocational expert, the ALJ found Ms. Dunlop could not perform her past work because it had required a light

5

level of exertion, which generally requires the ability to stand or walk for six hours of a work day. At step five, the ALJ determined that Ms. Dunlop is capable of performing the requirements of jobs as an order clerk, telephone clerk, or account clerk which, based on the VE's testimony, fit Ms. Dunlop's RFC and vocational profile and are available in significant numbers in the State of Indiana. Accordingly, the ALJ found that Ms. Dunlop was not disabled at any time from her alleged onset date through the date of the ALJ's decision.

## II. The ALJ did not properly weigh the opinions of Ms. Dunlop's treating physician.

### A. SSA regulations require an evaluation of the weight given medical opinions.

The weight an ALJ gives to medical opinions is guided by factors described in 20 C.F.R. § 404.1527(c). An opinion by a treating physician about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. *Id.* § 404.1527(c)(2). The rationale for according controlling weight in these circumstances is that a treating source may provide a longitudinal and detailed picture of a claimant's impairments and may bring a unique perspective to the medical evidence that may not be shown by objective medical findings alone or reports from individual examinations. *Id.* Controlling weight is never assigned, however, to a treating physician's opinion whether a listing is met or about the

6

claimant's residual functional capacity because "the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 404.1527(d)(2).

If the ALJ reasonably determines the treating physician's opinion does not deserve controlling weight, she must determine what weight it deserves. The regulation provides a list of factors to guide that evaluation. The same factors guide the weighing of other medical opinions in the record, including those of state agency physicians and other non-treating medical sources. The factors are the degree to which the opinion (a) is supported by relevant evidence and explanations; (b) considered all pertinent evidence; (c) is consistent with the record as a whole; and (d) is supported or contradicted by other factors, such as the physician's understanding of SSA disability requirements. *Id.* § 404.1527(c)(3), (4), (6). The physician's field of specialty and the nature and extent of her treatment relationship with the claimant are also considered. *Id.* § 404.1527(c)(1), (2), and (5).

### B. The ALJ determined the treating physician's opinions were not entitled to controlling weight but did not indicate the weight she otherwise thought appropriate.

Ms. Dunlop has a history of hip, knee, and back pain, and difficulties with her hands. She underwent several MRIs, including an MRI of her right hip in August 2008, an MRI of her right knee in April 2010, and an MRI of her lumbar spine in October 2010. Her hip showed mild bursitis at the greater trochanter and mild edema (swelling) at some junctions, her knee showed small tears in the menisci, and her spine showed mild degenerative changes but was otherwise unremarkable. In August 2011, Ms. Dunlop had an arthroscopy and medial

7

meniscectomy on her right knee, and in early 2012, she had successive carpal tunnel release surgeries on her left and right hands. Otherwise, she was treated with pain medication, brief periods of physical therapy, and a home exercise program.

The record contains two RFC questionnaire forms completed by Dr. Chrystal Anderson, whom the ALJ characterized as a treating physician. The first one is dated July 18, 2011. (R. 292-93). The second one is a copy of the first with "updated" changes on March 13, 2012, to note limits in Ms. Dunlop's hand functioning. (R. 320-21). Dr. Anderson circled or checked boxes indicating, among other things, that Ms. Dunlop (a) experiences pain that would "often" (as opposed to never, seldom, frequently, or constantly) interfere with her attention and concentration; (b) can sit only four hours and stand two hours in a workday; (c) needs one or two unscheduled breaks in a workday and likely would miss work more than four times per month; and (d) at least as of March 13, 2012, has limited gross and fine finger manipulation abilities.

The ALJ decided these opinions were not entitled to controlling weight, and she provided sufficient reasons for that decision by citing to objective medical diagnostic evidence that was inconsistent with the severity in functioning Dr. Anderson assigned. For example, the ALJ noted that the MRIs of Ms. Dunlop's lumbar spine and right hip showed only mild diagnostic findings and that she had undergone surgery to address her knee and hand problems.

8

But other than deciding that the opinions did not deserve controlling weight, the ALJ did not address what other weight they deserved, if any. *See* SSR 96-2p ("Adjudicators must remember that a finding that a treating source medical opinion . . . is not entitled to 'controlling weight' [does not mean] that the opinion should be rejected.") Even if the court surmises that the ALJ thought Dr. Anderson's opinions deserved no weight at all, the court cannot discern from the ALJ's decision her evaluation of many of the factors germane to determining the weight to give. There is no discussion of Dr. Anderson's specialty and how her area of expertise does or does not lend support to her findings. The ALJ did not discuss the consistency (or lack thereof) of Dr. Anderson's opinions with Dr. Anderson's treatment and examination notes, and she suggested Dr. Anderson was unfamiliar with only one facet of Ms. Dunlop's condition and treatment—her having undergone carpal tunnel release surgeries that the orthopedic surgeon thought had terrific results. Further, although the ALJ commented that Dr. Anderson had a two-year treating relationship with Ms. Dunlop (which suggests a longitudinal history favoring some weight to the opinion),[2] she instead emphasized an examination finding by the state agency doctor who saw Ms. Dunlop only once and nearly nine months before the date of Dr. Anderson's July 2011 opinion. The state agency doctor's examination was a basis for a medical opinion in the record that Ms. Dunlop had no severe

---

[2]  Although Ms. Dunlop apparently has been a patient of Dr. Anderson's since 2009, Dr. Anderson may not always have been the primary care provider with respect to musculoskeletal issues. It appears Ms. Dunlop was seen for a substantial period of time by Dr. Renshaw for these matters.

9

musculoskeletal impairments (*See* R. 281, 290), a conclusion the ALJ clearly disagreed with.

In summary, because some of the guiding factors suggest Dr. Anderson's opinions *may* deserve some weight and because there are wide gaps in the ALJ's analysis of the weight to give Dr. Anderson's opinions, the court cannot find substantial evidence supporting the Commissioner's decision. The court does not suggest any particular weight the ALJ must give; it finds only a failure of articulation in the ALJ's decision.

### C. The ALJ's credibility assessment should be readdressed in light of her decision on the weight to give Dr. Anderson's opinions.

Because this case must be remanded for the ALJ to articulate the weight she assigns to Dr. Anderson's opinions and to provide supporting reasons, the court does not reach the issue whether the ALJ's credibility assessment was patently wrong. The greater or lesser weight the ALJ gives Dr. Anderson's opinions may well cause her to view Ms. Dunlop's subjective complaints about the limiting effects of her impairments and resulting pains in a more favorable light than the current decision reflects.

## Conclusion

For the foregoing reasons, the Commissioner's decision that Ms. Dunlop is not disabled is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g).

So ORDERED.

Dated: March 25, 2015

_Debra McVicker Lynch_
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system